UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| BRICE PRICE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:20-cv-00500-JMS-MJD |
| | ) | |
| TOLBERT, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING SUMMARY JUDGMENT**

Indiana prisoner Brice Price is suing Correctional Officer Russell Tolbert for coughing in his face and infecting him with Covid-19. Mr. Price filed this lawsuit on the same day he filed his administrative grievance. Rather than wait for a response to his grievance, Mr. Price immediately ran to federal court, thereby depriving prison officials of an opportunity to address and correct the problem.

Mr. Price argues that the issue is whether he exhausted his available administrative remedies before he filed his amended complaint. That is incorrect. Mr. Price stated his Eighth Amendment claim against Officer Tolbert in his original complaint and in his amended complaint. Under existing precedent from the Seventh Circuit, he may not replead a previously unexhausted claim in an amended complaint to avoid dismissal. Mr. Price's efforts to exhaust his available administrative remedies after he filed this lawsuit are immaterial.

Officer Tolbert's motion for summary judgment on Mr. Price's Eighth Amendment claim for failure to exhaust is **GRANTED**. The Court relinquishes supplemental jurisdiction over Mr. Price's Indiana tort claims because there is no longer a pending federal claim in this lawsuit. The action is **DISMISSED WITHOUT PREJUDICE**. This Order does not preclude Mr. Price from refiling his claims against Officer Tolbert in a new action within the two-year statute of limitations.

## I. SUMMARY JUDGMENT STANDARD

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Com. Schools*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Community Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Trustees of Ind. Univ.,* 870 F.3d 562, 573-74 (7th Cir. 2017).

## II. BACKGROUND

### A. Offender Grievance Process

The Indiana Department of Correction ("IDOC") maintains an offender grievance process. Dkt. 48-1. The process has three steps: (1) a formal grievance to the Offender Grievance Specialist; (2) a facility-level appeal to the Warden; and (3) a department-level appeal to the Department Grievance Manager. *Id.* at 3, 9-13.

Within ten business days of receiving the grievance, the Offender Grievance Specialist must notify the prisoner that the grievance has been accepted or that the grievance has been rejected for failing to meet certain technical requirements. *Id.* at 10. If the grievance is accepted, the

Offender Grievance Specialist must issue a grievance response within fifteen business days after the grievance is recorded. *Id.* The Offender Grievance Specialist may extend this deadline by five business days if the issue requires further investigation. *Id.* at 11.

"If the offender receives no grievance response within twenty (20) business days of the Offender Grievance Specialist's receipt of the grievance, the offender may appeal as though the grievance had been denied." *Id.* at 11. Ordinarily, a prisoner has five business days after the date of the grievance response to submit a facility-level appeal. *Id.* at 12.

### B. Alleged Assault, Grievance, and Procedural History

On September 18, 2020, Mr. Price encountered Officer Tolbert while he was walking to the bathroom at Putnamville Correctional Facility. *See* dkt. 1, p. 8 (the original complaint). This was the first year of the Covid-19 pandemic. *Id.* Mr. Price and Officer Tolbert were wearing their face masks around their necks, which left their faces uncovered. *Id.* Mr. Price leaned toward Officer Tolbert and started talking to him. *Id.* Officer Tolbert "then coughed multiple times in Price's exposed face and said, 'What you gonna do?'" *Id.* Officer Tolbert told another person over the phone, "He coughed on me, so I coughed back at him." *Id.* As a result of Officer Tolbert's conduct, Mr. Price became infected with Covid-19. *Id.* at 2.

On September 24, 2020, Mr. Price attempted to exhaust his available administrative remedies by submitting Grievance No. 118261. Dkt. 54, p. 10. The grievance claimed Mr. Price was "assaulted / exposed to the COVID-19 virus by Officer Tolbert at 12:55 p.m. on 9/18/20." *Id.* Prison records show that the grievance was received on September 28, 2020. *Id.* at 11, 23.

Also on September 24, 2020, Mr. Price initiated this action by filing the original complaint. *See* Dkt. 1. The original complaint named "Officer Tolbert #541" as a defendant and alleged that Mr. Price was "assaulted by Officer Tolbert with the deadly COVID-19 virus." *Id.* at 1, 2. The

original complaint described the incident between Mr. Price and Officer Tolbert on September 18. *Id.* at 8.

On October 4, 2020, Mr. Price submitted a Request for Interview form. Dkt. 54, p. 22. He asked, "Can I get a copy of all my grievances filed. You have my permission to charge me for the copies by taking it off my account. Need the copies for legal purposes." *Id.* This form does not include a response from prison officials. *Id.*

On October 10, 2020, Mr. Price submitted second formal grievance. *Id.* at 14. He restated his complaints about Officer Tolbert and stated, "This is my third time grieving this situation, yet no report of a grievance shows up in my 'history of Grievance for Offender.'" *Id.* Williams rejected this grievance as untimely. *Id.* at 15.

On October 14, 2020, Mr. Price submitted a second Request for Interview form. *Id.* at 16. He asked, "Can I have a copy of my grievances that I have turned in please, and can you respond to them?? I have heard nothing back from you for any of my grievances I have entered since 9/18/20." *Id.* This form does not include a response from prison officials. *Id.*

Also on October 14, 2020, Mr. Price submitted a third Request for Interview form. *Id.* at 20. He asked, "Mr. Williams, can I please have 2 appeal forms to appeal the denial of my grievance. Thank you. Grievance forms and appeal forms are not supplied where I am being housed." *Id.* Williams responded, "For what appeals? Return the documents stamp." *Id.*

On October 15, 2020, Mr. Price submitted a fourth Request for Interview form. *Id.* at 17. He stated, "Mr. Williams, I sent you a formal grievance for the battery between myself and Tolbert on 9/24/20. If you did not misplace it, it got lost in the mail to no fault of my own. Please allow me to seek relief via grievance process. Thank you." *Id.* In response, Williams answered, "I am still looking into this one." *Id.*

Also on October 15, 2020, Mr. Price submitted a fifth Request for Interview form. *Id.* at 21. He stated, "I am forced to use the informal grievance process where I am at, and the custody officers are not supplied with grievance forms. This is part of the reason why my grievance[s] were late. Also, one must have been lost in the mail." *Id.* This form does not include a response from prison officials. *Id.*

Also on October 15, 2020, Mr. Price submitted a sixth Request for Interview form. *Id.* at 18. He stated, "Grievance Officer Williams has been discarding my grievances since 9/18/20. I have filed at least 5 grievances and have not received a response from any of them since. They were all in accordance with grievance policy. Help me please." *Id.* In response, Williams answered, "5 grievances received between 9-28 & 10-13. 3 returned because they are out of timeframe as per policy. 2 grievances are being looked into: Case 118261 [Tolbert Grievance] & 118728." *Id.*

On October 16, 2020, Mr. Price submitted a seventh Request for Interview form. *Id.* at 19. He stated, "If my grievances are being denied I am still entitled to seeing that it was rejected via State Form 45475, 'Return of Grievance.' Please, respectfully, accept and record my grievances or reject them and return them. Thank you." *Id.* In response, a prison official answered, "All paper work has be[en] returned to you." *Id.*

On November 4, 2020, Mr. Price filed the amended complaint. Dkt. 14. The amended complaint, like the original complaint, named Officer Tolbert as a defendant. *Id.* at 2. The amended complaint stated that Mr. Price "was assaulted by Officer Tolbert and as a result, contracted the COVID-19 virus." *Id.* at 3. The amended complaint was screened by the Court, and Mr. Price's claims against Officer Tolbert were allowed to proceed under the Eighth Amendment and Indiana tort law. Dkt. 21, p. 4. All other claims were dismissed. *Id.*

5

On November 12, 2020, Williams responded to Grievance No. 118621. Dkt. 54, p. 11. Excluding weekends, Columbus Day, Election Day, and Veterans Day, this response was made 30 business days after Mr. Price's grievance was received on September 28. Under the terms of the grievance process, this response was either 15 or 10 business days late, depending on whether the deadline to respond was officially extended. *See* dkt. 48, p. 10.

The table below summarizes the timeline of the relevant events described above:

| DATE | EVENT |
|---|---|
| September 18 | Alleged Assault |
| September 24 | Price Submits Grievance |
| September 24 | Price Files Original Complaint – Includes 8th Amend. Claim |
| September 28 | Grievance is Received by Williams |
| October 13 | Williams' Deadline to Reject or Accept Grievance |
| October 14 | Prices Requests Appeal Forms |
| October 15 | Williams Tells Price he is still Investigating his Grievance |
| October 20 | Williams' Deadline to Issue Grievance Response |
| November 4 | Price Files Amended Complaint – Includes 8th Amend. Claim |
| November 12 | Williams Issues Grievance Response |

**C. Motion for Summary Judgment**

Officer Tolbert has moved for summary judgment. He makes the following argument:

> Mr. Price timely filed a grievance regarding his federal claims against Defendant, on September 24, 2020. Rather than waiting for a reply, let alone following the appeals process set forth in the Offender Grievance Process, Mr. Price filed his original complaint on the same day, September 24, 2020. Because Mr. Price only initiated the Offender Grievance Process, rather than fully exhausting it prior to filing his complaint, his Eighth Amendment Claim must be dismissed.

Dkt. 49, p. 6 (internal citations omitted).

In response, Mr. Price states that he did not exhaust his available administrative remedies before he initiated this action. Dkt. 54, p. 3. He argues that his Eighth Amendment claim against

Officer Tolbert should proceed because he exhausted his available administrative remedies before he filed the amended complaint. *Id.* He relies on *Barnes v. Briley*, 420 F.3d 673 (7th Cir. 2005), and *Cannon v. Washington*, 418 F.3d 714 (7th Cir. 2005), for the proposition that "claims [arising] after the original complaint was filed can be added by amending the complaint so long as [the new claims] were fully exhausted by the time the plaintiff seeks leave to amend." Dkt. 54, p. 3 (internal citation omitted).

In reply, Officer Tolbert distinguishes *Barnes* and *Cannon*. Officer Tolbert argues that these cases apply narrowly to claims that were not previously raised in an earlier complaint. Because Mr. Price named Officer Tolbert as a defendant in his original complaint and alleged that Officer Tolbert coughed on him and infected him with Covid-19, Officer Tolbert argues, any attempts by Price to exhaust his administrative remedies after he filed this lawsuit are immaterial. Dkt. 56, pp. 3-4.

### III. Discussion

#### A. Exhaustion Standard

The Prison Litigation Reform Act ("PLRA") provides, "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e(a).

"An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016). An administrative procedure is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644. "Remedies that are genuinely unavailable or nonexistent need not be exhausted. A remedy becomes unavailable if prison employees do not

respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016). For example, "exhaustion is not required when the prison officials responsible for providing grievance forms refuse to give a prisoner the forms necessary to file an administrative grievance." *Gooch v. Young*, 24 4th 624, 627 (7th Cir. 2022).

It is the defendant's burden to establish that the administrative process was available to the plaintiff. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it.").

### B. Analysis

Because Mr. Price stated an Eighth Amendment claim against Officer Tolbert in the original complaint, *Barnes* and *Cannon* do not apply, and the issue is whether Mr. Price exhausted his available administrative remedies before he filed the original complaint. He did not. He filed his grievance—which is only the first step in the grievance process—on the same day he filed the original complaint. This did not provide prison officials with an opportunity to address and correct the issue.

The fact that prison officials responded to Mr. Price's grievance, albeit outside the timeframe permitted by the grievance process, demonstrates that the grievance process was available and not illusory. While prisoners need not wait indefinitely for prison officials to process a properly filed grievance, they must wait until prison officials' internal deadline to respond has expired. Bringing a claim in federal court on the same day the claim is raised in the grievance process is incompatible with the purpose of the PLRA's exhaustion requirement.

8

### 1. *Barnes* and *Cannon* do not apply

The parties dispute whether Mr. Price needed to exhaust his available administrative remedies before he filed the original complaint on September 24, 2020, or before he filed the amended complaint on November 4, 2020. As a general rule, "a prisoner may not file a lawsuit before exhausting his administrative remedies, even if he exhausts those remedies while the litigation is pending." *Cannon*, 418 F.3d at 719. *Barnes* and *Cannon* provide an exception to this rule, which allows prisoners to raise new, previously unexhausted claims in an amended complaint. *Id.*; *Barnes*, 420 F.3d at 678. Mr. Price argues that *Barnes* and *Cannon* are analogous to this case, and Officer Tolbert argues they are distinguishable.

In *Barnes*, the plaintiff brought a federal tort claim action against the Centers for Disease Control and Prevention ("CDC"). 420 F.3d at 675. The district court found that Barnes had exhausted his remedies against the CDC before bringing the lawsuit and recruited pro bono counsel to represent him. *Id.* After investigating the case, recruited counsel determined that Barnes also had Eighth Amendment claims against state prison officials. *Id.* Barnes exhausted his available administrative remedies for these claims and then filed an amended complaint naming those prison officials as defendants. *Id.*

The Seventh Circuit held that Barnes exhausted his available administrative remedies as to his new Eighth Amendment claims. The court reasoned that "Barnes did not attempt to replead improperly exhausted claims in his amended complaint. Rather, he asserted properly exhausted FTCA claims in his original complaint, and later he raised new, properly exhausted § 1983 claims against new defendants." *Id.* at 678. Under these circumstances, "[t]he filing of the amended complaint was the functional equivalent of filing a new complaint . . . and it was only at that time

9

that it became necessary to have exhausted the administrative remedies against the state defendants." *Id.*

In *Cannon*, the plaintiff was assaulted twice in 1996. 418 F.3d at 716. Then, he was assaulted a third time in 1998. He filed a lawsuit against prison officials for the 1996 assaults. *Id.* at 717. Then, he exhausted his administrative remedies as to the 1998 assault. *Id.* Finally, he filed an amended complaint against prison officials for all three assaults. *Id.*

The Seventh Circuit held that Cannon exhausted his available administrative remedies as to his new claims arising from the 1998 assault at the time he filed the amended complaint, and the court allowed those claims to proceed. *Id.* at 719. The court reasoned that Cannon "did not hale those [new] defendants into court until he had pursued all of the administrative remedies available to him. That he raised these [new] claims by amending his complaint in an already pending case rather than initiating an entirely new proceeding is irrelevant to the objectives of § 1997e(a)."

The Seventh Circuit distinguished this precedent in *Chambers v. Sood*, 956 F.3d 979 (7th Cir. 2020). In his original complaint, Chambers sued "Unknown Physician #1" for failing to treat his herpes outbreak, and the complaint was dismissed for failure to exhaust. *Id.* Chambers then exhausted his administrative remedies and filed an amended complaint that expressly named Dr. Sood for failing to treat his herpes outbreak. *Id.* at 982-83. The district court dismissed this claim because Chambers failed to exhaust his available administrative remedies before he filed the original complaint. *Id.* at 983.

The Seventh Circuit affirmed the dismissal and rejected Chambers' reliance on *Barnes* and *Cannon*. *Id.* at 984. The Court explained that *Barnes* and *Cannon* "addressed amended complaints raising new claims that the plaintiff had exhausted while the litigation was ongoing. Chambers's

10

claim against Dr. Sood is not new; it's the same claim he raised in his original pro se complaint, albeit against 'Unknown Doctor # 1." *Id.* at 984-85.

*Barnes* and *Cannon* do not apply to Mr. Price's claim against Officer Tolbert. Mr. Price named "Officer Tolbert #541" in the original complaint. Dkt. 1, p. 1. The original complaint alleged that Mr. Price was "assaulted by Officer Tolbert with the deadly COVID-19 virus" when Officer Tolbert "coughed multiple times in Price's exposed face and said, 'What you gonna do?'" *Id.* at 2, 8. This is the same claim Mr. Price is pursuing in his amended complaint. *See* dkt. 14.

The Court is unpersuaded by Mr. Price's argument that his original complaint "did not bring any actions, claims, or allegations against [Officer] Tolbert . . . did not seek remedies for any actions allegedly committed by Officer Tolbert, and did not otherwise plead against [Officer Tolbert]." Dkt. 53, para. 4. The original complaint named Officer Tolbert as a defendant, and the allegations therein stated a claim against Officer Tolbert under the Eighth Amendment. Thus, *Barnes* and *Cannon* are distinguishable, and *Chambers* controls.

The Court acknowledges the Supreme Court's recent decision, in an 8-1 majority opinion, in *Ramirez v. Collier*, 142 S. Ct. 1264 (2022). In dictum, *Ramirez* suggests that an amended complaint may qualify as a new "action" for purposes of § 1997e(a), whether or not the amended complaint raises a new claim or a claim that was previously raised and unexhausted:

> Respondents briefly argue that Ramirez failed to exhaust Texas's grievance process because he filed suit before prison officials ruled on his Step 2 grievance. It is true that prison officials did not decide that grievance until six days after Ramirez sued. But Ramirez filed an amended complaint that same day, and he also filed a second amended complaint after that. ***The original defect was arguably cured by those subsequent filings***. *See Rhodes v. Robinson*, 621 F.3d 1002, 1005 (C.A.9 2010) ('As a general rule, when a plaintiff files an amended complaint, the amended complaint supersedes the original, the latter being treated thereafter as non-existent.') (PLRA case). ***In any event, we need not definitively resolve the issue as respondents failed to raise it below***.

*Ramirez*, 142 S. Ct. at 1276 (citations to the record omitted) (emphasis added).

11

This language is contrary to the Seventh Circuit's decision in *Chambers*. Regarding Supreme Court dictum, the Seventh Circuit has previously reasoned, "[t]his is the sort of message that, whether or not technically dictum, a *court of appeals* must respect, given the Supreme Court's entitlement to speak through its opinions as well as through its technical holdings." *United States v. Skoien*, 614 F.3d 638, 641 (7th Cir. 2010) (emphasis added); *see also Reich v. Continental Cas. Co.*, 33 F.3d 754, 757 (7th Cir. 1994) (observing that "recent [Supreme Court] dictum that considers all the relevant considerations and adumbrates an unmistakable conclusion . . . provides the best, though not infallible, guide to what the law is, and it will ordinarily be the duty of a lower court to be guided by it.").

The Court is mindful of the deference owed to all observations made by the Supreme Court, particularly when those observations are made in a recent opinion joined by eight Justices. Nevertheless, the Court will not speculate about whether the Seventh Circuit will choose to reconsider its holding in *Chambers*, or whether the language from *Ramirez* may one day become law. The Court notes that the *Ramirez* used the qualifier "arguably cured" and expressly stated that it "need not definitively resolve the issue." 142 S. Ct. at 1276. Under these circumstances, this Court is constrained by the Seventh Circuit's binding precedent as it currently exists.

Having determined that the issue before the Court is whether Mr. Price exhausted his available administrative remedies before he filed the original complaint, the Court will proceed to analyze this issue in the next section.

### 2. Mr. Price did not Exhaust his Available Administrative Remedies

Officer Tolbert has the burden of proving that Mr. Price's facility maintained a grievance process, that the grievance process was available to Mr. Price, and that Mr. Price failed to complete the grievance process. It is undisputed that Mr. Price failed to complete his facility's grievance

12

process, so the issue is whether the grievance process was made "unavailable" by some affirmative misconduct by prison officials.

Prison officials did not engage in any affirmative misconduct at the time Mr. Price filed this lawsuit. Mr. Price was aware of the grievance process, he was provided with a grievance form, and he was able to use this form to raise his complaints about Officer Tolbert. At that point, all Mr. Price had to do was wait for a response. But instead of waiting, he immediately filed his Eighth Amendment claim against Officer Tolbert in federal court.[1] This deprived prison officials of the opportunity to address and correct his concerns before he filed suit, which is the essential objective of the PLRA's exhaustion requirement. *See Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) (noting that "the purpose of the exhaustion requirement" is to provide prison officials with "notice of, and an opportunity to correct, a problem" before the prisoner files a lawsuit in federal court).

Offender Grievance Specialist C. Williams eventually responded to Mr. Price's grievance on November 12, 2020. Dkt. 54, p. 11. This was thirty business days after the grievance was received and either ten or fifteen business days after Williams' deadline to respond. *See* dkt. 48-1, p. 11. The fact that Williams issued a response, albeit a belated one, is evidence that the grievance process was available and not illusory.

If Williams had never responded to Mr. Price's grievance, or if Mr. Price had waited for Williams' response deadline to expire before filing this lawsuit, the result may well have been different. *Cf. Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) ("Prison officials may not take unfair advantage of the exhaustion requirement, and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance."). But Williams' delay in responding to

---

[1] In fact, Mr. Price mailed his original complaint on September 21, 2020—three days before he submitted his grievance. Dkt. 1, p. 10.

13

Mr. Price's grievance, without more, did not render the grievance process unavailable or excuse Mr. Price's decision to file this lawsuit on the same day he submitted his grievance.

Accordingly, Officer Tolbert's motion for summary judgment on Mr. Price's Eighth Amendment claim is **GRANTED**.

### C. State Tort Claims

Mr. Price is also proceeding against Officer Tolbert on Indiana tort claims for battery, negligence, and intentional infliction of emotional distress. Dkt. 21, p. 3. The PLRA's exhaustion requirement does not apply to these claims. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under **section 1983 of this title, or any other Federal law**, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." (emphasis added)). But now that Mr. Price's Eighth Amendment claims have been dismissed, the Court must decide whether to retain or relinquish supplemental jurisdiction over his state law claims. 28 U.S.C. § 1367(c)(3).

A federal court may relinquish supplemental jurisdiction over state law claims if the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). When deciding whether to exercise supplemental jurisdiction, courts consider and weigh the "values of judicial economy, convenience, fairness, and comity" at every stage of the litigation. *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997).

"As a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining pendant state claims." *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007). "This rule however, is subject to three recognized exceptions: when the refilling of the state claims is barred by the statute of limitations; where

substantial judicial resources have already been expended on the state claims; and when it is clearly apparent how the state claim is to be decided." *Id.*

Mr. Price's Indiana tort claims are not barred by the statute of limitations. His underlying allegations against Officer Tolbert occurred on September 18, 2020. *See* dkts. 1, 14. Indiana has a two-year statute of limitations for personal injury claims. Ind. Code § 34-11-2-4(a). Thus, Mr. Price has until September 18, 2022, to refile his state tort claims, assuming that this incident occurred on September 18, 2020, as he alleges.

The Court has not expended substantial judicial resources on Mr. Price's Indiana tort claims. No discovery has been conducted on the merits of these claims, no hearings have been held, and no substantive motions have been ruled on.

It is not clearly apparent how these state claims will be decided. At this point, the only evidence against Officer Tolbert are the allegations in Mr. Price's complaint. Officer Tolbert has not been deposed, no surveillance video has been obtained, and no official reports or other witness statements describing the altercation between Mr. Price and Officer Tolbert are in the record.

Nothing suggests that litigating these claims in federal court would be more convenient for the parties than litigating them in state court, nor would it be unfair to the parties to have their claims adjudicated in state court. Further, comity requires "respect for the state's interest in applying its own law, along with the state court's greater expertise in applying state law." *Huffman v. Hains*, 865 F.2d 920, 923 (7th Cir. 1989).

For these reasons, the Court follows the general rule and relinquishes supplemental jurisdiction over Mr. Price's Indiana tort claims. These claims are **DISMISSED WITHOUT PREJUDICE**. Officer Tolbert's motion for summary judgment on these claims for failure to comply with the notice provisions of the Indiana Tort Claims Act is **DENIED AS MOOT**.

## IV. Conclusion

The defendant's motion for summary judgment on Mr. Price's Eighth Amendment claim, dkt. [48], is **Granted**. The Court relinquishes supplemental jurisdiction over his remaining Indiana tort claims, and the action is **Dismissed without Prejudice**. This order does not preclude Mr. Price from refiling his claims in a new lawsuit within the two-year statute of limitations. Final judgment in accordance with this Order shall now issue.

**IT IS SO ORDERED**.

Date: 4/22/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

BRICE PRICE
202243
PUTNAMVILLE - CF
PUTNAMVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only


Peter Andrew Inman
INDIANA ATTORNEY GENERAL
peter.inman@atg.in.gov

Adrienne Nicole Pope
INDIANA ATTORNEY GENERAL
adrienne.pope@atg.in.gov